IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DALLAS COUNTY HOSPITAL DISTRICT, d/b/a PARKLAND HEALTH & HOSPITAL SYSTEM, | § § § § | |
| *Plaintiff,* | § § | Case No. _____ |
| vs. | § § | JURY TRIAL DEMANDED |
| NEXTGEN HEALTHCARE INFORMATION SYSTEMS, LLC, | § § § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Dallas County Hospital District, d/b/a Parkland Health & Hospital System (the "District" or "Plaintiff") files this Original Complaint, and in support thereof respectfully states as follows:

### PARTIES

1. The District is a hospital district created under the Health and Human Services Code and is a political subdivision of the State of Texas, with its principal operations in Dallas, Texas.

2. Defendant NextGen Healthcare Information Systems, LLC ("NextGen" or "Defendant") is a California limited liability company with its principal place of business at 18111 Von Karman Ave., Ste. 700, Irvine, CA 92612-7110. It may be served through its agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas TX 75201, or wherever it may be found.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, because there is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000.00. In particular, Parkland, as a political subdivision of the State, is a citizen of the state of Texas, and NextGen is a citizen of the state of California, its state of incorporation and principal place of business. Further, NextGen is a wholly owned subsidiary of Quality Systems, Inc., a California Corporation with its principal place of business located at 18111 Von Karman Avenue, Suite 700, Irvine, California, and therefore no member of NextGen resides within or is a citizen of the State of Texas.

4. This Court has personal jurisdiction over Defendant because the Defendant conducts business in Texas.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of Texas.

## STATEMENT OF FACTS

6. This suit is an action to enforce an administrative final decision of default against NextGen. Parkland, a political subdivision of the state, entered into a contract with NextGen that expressly provides an administrative mechanism for resolving issues of fact or law arising under that contract. Pursuant to that mechanism, the Contracting Officer made a determination that NextGen had failed to perform its obligations to Parkland. NextGen failed to appeal that

determination, which is now "final and conclusive." Accordingly, the only issue to be determined in this proceeding is damages.

7. On September 15, 2013, the District entered into a contract with NextGen (the "Contract") for the provision of an electronic medical record management system (an "EMR") for use in providing care to inmates housed in Dallas County correctional facilities.

8. NextGen was awarded the Contract as part of a bidding process in which NextGen submitted a proposal that described NextGen's capability to deliver an EMR consistent with the stated project requirements for a stated price. Among NextGen's representations in its bid proposal were that it could customize software and provide specialty-specific templates to be used for patient intake, initial health assessment, provider and nursing visits, continued care, and other workflows. NextGen specifically represented that it could add and remove fields from its templates, and link logic commands to certain fields so that tasks could be assigned based on the information entered into the system. NextGen's bid also stated that its system has "the most robust and flexible alert subsystem in the market, bar none" and that alerts and triggers could be easily edited, and that NextGen's staff would be able to adjust the triggers during implementation.

9. In reliance on these statements and NextGen's representation that it could deliver a system meeting the District's requirements for the price stated in the bid, the District awarded NextGen the Contract.

10. By submitting a bid and entering into the Contract, NextGen agreed to be bound by the dispute resolution process set out in the Contract. *See Texas Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors*, 92 S.W.3d 477 (Tex. 2002); *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004).

11. The Contract was to be performed in two phases. First, NextGen was to develop and install the EMR software by an agreed-upon "go-live" date. Thereafter, NextGen was to provide maintenance and administrative support to the District in connection with the EMR.

12. The Contract includes a detailed Statement of Work (Schedule C), which specifies the baseline functionalities the District required to be a part of the EMR. Under the terms of the Contract, failure to deliver an EMR that meets the Statement of Work constitutes a default.

13. Among the required elements for the EMR is a bi-directional pharmacy interface. That is, doctors should be able to input medication orders into the system for transmission to the pharmacy, and the pharmacy must be able to send data regarding the inmate's identification and dispensed medications for storage in the EMR database.

14. The Contract also requires that the system be able to handle medical information as soon as an inmate arrives by setting up a dummy medical records number without waiting for data from AIS (the automated information system).

Further, the system must be able to merge this dummy file with the inmate's existing information after booking to ensure complete and accurate medical records.

15. As a further measure to ensure that inmates receive proper care, the Contract proves that the EMR create tasks at the inmate's initial intake for a variety of continuing care measures, including follow-up appointments, suicide watch, and nursing reminders.

16. The Contract also calls for the EMR to have features designed to improve efficiency and detect irregularities. These features include:

   a. regular screen refresh at the maximum frequency allowed by the District's hardware and network infrastructure;

   b. configuration of nurse protocols to allow ordering of formulary medications consistent with established protocols;

   c. storing of information about inmate aliases;

   d. provision of alerts within the system to facilitate rules enforcement, prompt investigation of irregularities, and prevent medical error;

   e. transfer of appointments and tasks when inmates are moved to a new facility;

   f. update of appointments and tasks upon inmate release;

   g. use of "holding discharge" status for 72 hours before canceling an inmate record;

   h. creation of security groups permitted to order over-the-counter medications and certain inmate supplies;

    i. configuration of "flow sheets" that generate tasks based on inputted responses;

    j. generation of reports for booked inmates who did not receive a health screen;

    k. ability to track patients referred into and sent out of the District for care;

    l. established lab test orders for designated diagnoses or dispositions;

    m. automatic appointment reminders and orders if a provider selects the automated option in his or her medical notes entries;

    n. ability to gather and integrate data from the District's hardware vendors;

    o. high-speed scanning ability;

    p. maintenance of scanned files in their native format;

    q. ability to store photographs;

    r. ability to provide pre-defined order sets;

    s. ability to have authorized users create or edit templates, alerts and triggers as needed;

    t. appointment scheduling function that allows scheduling across multiple providers and locations based on available resources;

    u. ability to write reports that are customized and also integrate EMR data elements;

    v. use of bar-code identification for patients and medications;

    w. ability to record administration of medications and to undo such records in case of error or patient refusal;

    x. ability to differentiate between prescribed medications, "keep on person" medications, and others;

    y. ability to provide medications before an inmate's scheduled pass time;

    z. ability to view an inmate's medication history from current and prior admissions to the District;

    aa. ability to separately report injections for those receiving insulin and those receiving other injected medications; and

    bb. inclusion of features to properly track medications, such as refills, administration of medications while the electronic system is down, and automatic reassignment of undispensed medication administration to the next nurse after shift change.

17.    In addition, the Contract called for a consultative process between NextGen and the Jail Health Team to study current processes and develop recommendations for how to leverage the new automated system to streamline and improve inmate care.  This was to be followed by development of a mutually agreed upon project plan that incorporated the baseline requirements from the Statement of Work, and specified an implementation schedule and go-live date.  The initial draft project plan was to be provided by NextGen within 15 days of contract execution.

18. What followed were protracted discussions about the project plan, during which NextGen repeatedly resisted committing to complete the EMR by any specified date. NextGen delivered a project plan on October 8, 2013, but the plan was from another project and gave completion dates that pre-dated the contract and failed to address the District's specific requirements. On October 16, 2013, NextGen delivered a Work Breakdown Structure to the District, but it was a blank template that included no completion dates or milestones. After further discussions, in November 2013, NextGen provided an "Implementation Timeline" for the project of 6-10 months (which would have placed completion between May 2014 and September 2014), but again provided no completion dates for individual aspects of the EMR. Indeed, despite numerous requests, and countless meetings between the NextGen and District project teams, NextGen failed to deliver a complete project plan until January 2014. At that time, the proposed go-live date was October 4, 2014.

19. Over the next several months, the District continued to insist on a project plan with defined milestones and completion dates. By this time, it was apparent that the EMR would not go live within the 6-10 month period originally promised, or by the October 4, 2014 date. In August 2014, the parties agreed on a new plan with a later go-live date of February 25, 2015. That date passed without a fully functional EMR system. Members of the District project team continued to work with NextGen into the spring of 2015 to test the functionality of the system and discuss its progress, but were never given an EMR that performed as required

by the Contract. Indeed, each of the features noted above were either completely absent from the system, or failed to work in the manner the Contract prescribed. By this time, NextGen had missed its promised go-live date on at least 4 separate occasions.

20. Despite these ongoing difficulties, the District had transferred substantial funds to NextGen in payment of its periodic invoices. After it became apparent that the EMR developed by NextGen did not, and likely never would, meet the baseline requirements in the Statement of Work, the District ceased further payment.

21. Section E-2 of the Contract provides that all work performed by NextGen will be "free from defects and conform to the requirements of this contract." Further, Section E-2 allows the Contracting Officer for the District to give written notice of any defect or nonconformance within one year of acceptance of work, and requires that NextGen correct the defect at no cost to the District. In addition, Section G-5 of the Contract expressly authorizes the District to withhold payment for work not properly completed.

22. Consistent with these provisions, and due to the persistent problems with the EMR and NextGen's repeated failure to deliver a system that conformed to the Statement of Work, by letter dated May 14, 2015, the Contracting Officer – through his duly authorized representative -- provided written notice of the numerous defects and failures of the EMR as delivered by NextGen.

23.     NextGen responded on June 1, 2015, denying that its work failed to conform to the Contract's requirements, or otherwise blaming its failure to deliver on others.  NextGen did not commit to correct any of the defects identified by the District, and took no further action to improve the EMR system.

24.     Section H-9 of the Contract allows the Contracting Officer to terminate the Contract in whole or in part due to a failure by NextGen to fulfill its contract operations.  In the event of such a termination, "the District may take over the work and prosecute the same to completion by contract or otherwise" and NextGen "shall be liable to the District for any additional cost occasioned to the District thereby." Consistent with this authority, the Contracting Officer gave notice of termination of the Contract to NextGen by letter on June 17, 2015.  The termination letter cited NextGen's failure to correct the numerous defects set out in the Contracting Officer's May 14 correspondence, and demanded repayment of all amounts previously paid to NextGen by the District.  The letter made an express finding that NextGen was in default, and advised it of its right to appeal under the disputes clause of the Contract.

25.     To date, NextGen has failed to appeal this decision or otherwise respond.

26.     Section H-10 of the Contract specifies the manner in which disputes relating to the Contract will be resolved.  In particular, the Contract provides that the Contracting Officer will decide all such disputes, and that – absent an appeal within 90 days of such decision – the Contracting Officer's decision "shall be final

and conclusive."  More than 90 days have passed since the Contracting Officer notified NextGen that it was in default, and no appeal has been made to the District.  Accordingly, the finding of default has been conclusively decided against NextGen.

27.    All conditions precedent to filing suit have been satisfied by the District.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**

28.    The District incorporates by reference the allegations contained in Paragraphs 1 through 25 as if fully set forth herein.

29.    On or about September 15, 2013, the District and NextGen entered into a Contract by which NextGen agreed to provide an electronic medical records system that met the requirements set out in the Statement of Work incorporated into the Contract.

30.    The Contract is a valid and enforceable contract.  The Contract provides that failure to fulfill the obligations of the Contract is cause for the Contracting Officer to terminate the Contract, and that such rights and remedies are in addition to any other rights and remedies provided by law.  Further, the Contract provides that NextGen is liable for any additional cost to the District incurred in engaging others to complete the Contract.

31. Because the Contracting Officer made a finding of default, and NextGen failed to timely appeal consistent with the disputes provision of the Contract, NextGen is conclusively deemed to have breached.

32. As a direct and proximate result of NextGen's breach, the District has been damaged in an amount to be proven at trial, such damages to include the costs of cover.

## COUNT II
### FRAUDULENT MISREPRESENTATION

33. The District incorporates by reference the allegations contained in Paragraphs 1 through 25 as if fully set forth herein.

34. Through its bid proposal, NextGen made material representations to the District about its abilities and the characteristics of its software products, which NextGen either knew to be false when made, or were made recklessly as a positive assertion without knowledge of the truth. Specifically, NextGen stated that it could customize software and provide specialty-specific templates to be used for patient intake, initial health assessment, provider and nursing visits, continued care and other workflows for the stated bid price, but later indicated that it could not. Moreover, NextGen specifically represented that it could add and remove fields from its templates, and link logic commands to certain fields so that tasks could be assigned based on the information entered into the system at the price specified in the bid. In addition, NextGen's represented that its system has "the most robust and flexible alert subsystem in the market, bar none" and that alerts and triggers

could be easily edited, but the product provided to the District lacked this promised flexibility.

35. The District relied upon NextGen's statements in awarding NextGen the Contract.

36. As a consequence of NextGen's false or reckless statements, the District has been injured, including that it was delayed in obtaining a properly functioning EMR, had to incur the expense and hassle of finding an alternative contractor, and incurred added cost to the project.

## COUNT III
## NEGLIGENT MISREPRESENTATION

37. The District incorporates by reference the allegations contained in Paragraphs 1 through 25 as if fully set forth herein.

38. NextGen's bid proposal to the District was a representation made in the course of NextGen's business and in connection with a transaction – the bidding process – in which NextGen had an interest.

39. NextGen's bid proposal contained numerous false statements about the characteristics of its software, its ability to customize that software to meet the project requirements, and its ability to meet project requirements at the stated cost. In providing these statements to the District, NextGen failed to exercise reasonable care or competence, and it did so with knowledge that the District would rely on the bid proposal in deciding to whom to award the Contract.

40. The District justifiably relied upon NextGen's representations in the bid proposal in awarding the Contract, resulting in injury to the District, including

that it was delayed in obtaining a properly functioning EMR, had to incur the expense and hassle of finding an alternative contractor, and incurred added cost to the project.

### PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Parkland prays that the Court enter a judgment against Defendant granting Parkland the following relief:

a. Judgment against NextGen that it has breached the Contract and awarding the District damages in an amount to be determined by the trier of fact, plus pre-and post-judgment interest, costs, expenses, and attorneys' fees, as allowed by law (including without limitation, Texas Civ. Prac. & Rem. Code § 38.001) and under equitable principles, for NextGen's breach of the Contract;

b. Judgment against NextGen for fraud and an award of damages in an amount to be determined by the trier of fact, plus pre-and post-judgment interest, costs, and expenses, and for exemplary damages, as allowed by law and under equitable principles;

c. Judgment against NextGen for negligent misrepresentation and an award of damages in an amount to be determined by the trier of fact, plus pre-and post-judgment interest, costs, and expenses, and for exemplary damages, as allowed by law and under equitable principles; and

d. Such other and further relief as the Court deems just and appropriate.

| | |
|---|---|
| Date:   December 23, 2015 | Respectfully submitted, |

*/s/ Linda R. Stahl*
E. Leon Carter
Texas Bar No. 03914300
*lcarter@carterscholer.com*
Linda R. Stahl
Texas Bar No. 00798525
*lstahl@carterscholer.com*
**CARTER SCHOLER ARNETT**
**HAMADA & MOCKLER, PLLC**
8150 N. Central Expressway
Suite 500
Dallas, Texas 75206
T: 214.550.8188 | F: 214.550.8185

**ATTORNEYS FOR PLAINTIFF**