IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DALLAS COUNTY HOSPITAL DISTRICT, d/b/a PARKLAND HEALTH & HOSPITAL SYSTEM, | § § § § | |
| *Plaintiff,* | § § | Case No. 3:15-cv-4063-B |
| vs. | § § | JURY TRIAL DEMANDED |
| NEXTGEN HEALTHCARE INFORMATION SYSTEMS, LLC, | § § § | |
| *Defendant.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Dallas County Hospital District, d/b/a Parkland Health & Hospital System (the "District" or "Plaintiff") files this First Amended Complaint, and in support thereof respectfully states as follows:

### PARTIES

1.    The District is a hospital district created under the Health and Human Services Code and is a political subdivision of the State of Texas, with its principal operations in Dallas, Texas.

2.    Defendant NextGen Healthcare Information Systems, LLC ("NextGen" or "Defendant") is a California limited liability company with its principal place of business at 18111 Von Karman Ave., Ste. 700, Irvine, CA 92612-7110.   It has appeared through counsel in this suit.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, because there is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000.00.  In particular, Parkland, as a political subdivision of the State, is a citizen of the state of Texas, and NextGen is a citizen of the state of California, its state of incorporation and principal place of business.  Further, NextGen is a wholly owned subsidiary of Quality Systems, Inc., a California Corporation with its principal place of business located at 18111 Von Karman Avenue, Suite 700, Irvine, California, and therefore no member of NextGen resides within or is a citizen of the State of Texas.

4.     Further, the District has exhausted its administrative remedies, as this suit follows a final determination of default by the Contracting Officer.

5.     This Court has personal jurisdiction over Defendant because the Defendant conducts business in Texas.

6.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of Texas.

## STATEMENT OF FACTS

7.     This suit is an action to enforce an administrative final decision of default against NextGen.  Parkland, a political subdivision of the state, entered into a contract with NextGen that expressly provides an administrative mechanism for resolving issues of fact or law arising under that contract.  Pursuant to that

mechanism, the Contracting Officer made a determination that NextGen had failed to perform its obligations to Parkland.  NextGen failed to appeal that determination, which is now "final and conclusive."  Accordingly, the only issue to be determined in this proceeding is damages.

8.      On September 15, 2013, the District entered into a contract with NextGen (the "Contract") for the provision of an electronic medical record management system (an "EMR") for use in providing care to inmates housed in Dallas County correctional facilities.

9.      NextGen was awarded the Contract as part of a bidding process in which NextGen submitted a proposal that described NextGen's capability to deliver an EMR consistent with the stated project requirements for a stated price.  Among NextGen's representations in its February 5, 2013 bid proposal were that it could customize software and provide specialty-specific templates to be used for patient intake, initial health assessment, provider and nursing visits, continued care and other workflows.  NextGen specifically represented that it could add and remove fields from its templates, and link logic commands to certain fields so that tasks could be assigned based on the information entered into the system.  NextGen's bid also stated that its system has "the most robust and flexible alert subsystem in the market, bar none" and that alerts and triggers could be easily edited, and that NextGen's staff would adjusted the triggers during implementation.

10.      The District understood NextGen's statements about its system capabilities to mean that the particulars in the statement of work could be delivered

---

expeditiously and without extensive reprogramming to deliver the features in the scope of work. In reliance on these statements and NextGen's representation that it could deliver a system meeting the District's requirements for the price stated in the bid, the District awarded NextGen the Contract.

11.     By submitting a bid and entering into the Contract, NextGen agreed to be bound by the dispute resolution process set out in the Contract. *See Texas Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors*, 92 S.W.3d 477 (Tex. 2002); *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004).

12.     The Contract was to be performed in two phases. First, NextGen was to develop and install the EMR software by an agreed-upon "go-live" date. Thereafter, NextGen was to provide maintenance and administrative support to the District in connection with the EMR.

13.     The Contract includes a detailed Statement of Work (Schedule C), which specifies the baseline functionalities the District required to be a part of the EMR. Under the terms of the Contract, failure to deliver an EMR that meets the Statement of Work constitutes a default.

14.     Among the required elements for the EMR is a bi-directional pharmacy interface. That is, doctors should be able to input medication orders into the system for transmission to the pharmacy, and the pharmacy must be able to send data regarding the inmate's identification and dispensed medications for storage in the EMR database.

15.     The Contract also requires that the system be able to handle medical information as soon as an inmate arrives by setting up a dummy medical records number without waiting for data from AIS (the automated information system). Further, the system must be able to merge this dummy file with the inmate's existing information after booking to ensure complete and accurate medical records.

16.     As a further measure to ensure that inmates receive proper care, the Contract provides that the EMR create tasks at the inmate's initial intake for a variety of continuing care measures, including follow-up appointments, suicide watch, and nursing reminders.

17.     The Contract also calls for the EMR to have features designed to improve efficiency and detect irregularities. These features include:

    a. regular screen refresh at the maximum frequency allowed by the District's hardware and network infrastructure;

    b. configuration of nurse protocols to allow ordering of formulary medications consistent with established protocols;

    c. storing of information about inmate aliases;

    d. provision of alerts within the system to facilitate rules enforcement, prompt investigation of irregularities, and prevent medical error;

    e. transfer of appointments and tasks when inmates are moved to a new facility;

    f. update of appointments and tasks upon inmate release;

g. use of "holding discharge" status for 72 hours before canceling an inmate record;

h. creation of security groups permitted to order over-the-counter medications and certain inmate supplies;

i. configuration of "flow sheets" that generate tasks based on inputted responses;

j. generation of reports for booked inmates who did not receive a health screen;

k. ability to track patients referred into and sent out of the District for care;

l. established lab test orders for designated diagnoses or dispositions;

m. automatic appointment reminders and orders if a provider selects the automated option in his or her medical notes entries;

n. ability to gather and integrate data from the District's hardware vendors;

o. high-speed scanning ability;

p. maintenance of scanned files in their native format; (q) ability to store photographs;

q. ability to provide pre-defined order sets;

r. ability to have authorized users create or edit templates, alerts and triggers as needed;

s. appointment scheduling function that allows scheduling across multiple providers and locations based on available resources;

t. ability to write reports that are customized and also integrate EMR data elements;

u. use of bar-code identification for patients and medications;

v. ability to record administration of medications and to undo such records in case of error or patient refusal;

w. ability to differentiate between prescribed medications, "keep on person" medications, and others;

x. ability to provide medications before an inmate's scheduled pass time;

y. ability to view an inmate's medication history from current and prior admissions to the District;

z. ability to separately report injections for those receiving insulin and those receiving other injected medications; and

aa. inclusion of features to properly track medications, such as refills, administration of medications while electronic system is down, and automatic reassignment of undispensed medication administration to the next nurse after shift change.

18.    In addition, the Contract called for a consultative process between NextGen and the Jail Health Team to study current processes and develop recommendations for how to leverage the new automated system to streamline and improve inmate care. This was to be followed by development of a mutually agreed

upon project plan that incorporated the baseline requirements from the Statement of Work, and specified an implementation schedule and go-live date. The initial draft project plan was to be provided by NextGen within 15 days of contract execution.

19.    What followed were protracted discussions about the project plan, during which NextGen repeatedly resisted committing to complete the EMR by any specified date. NextGen delivered a project plan on October 8, 2013, but the plan was from another project and gave completion dates that pre-dated the contract and failed to address the District's specific requirements. On October 16, 2013, NextGen delivered a Work Breakdown Structure to the District, but it was a blank template that included no completion dates or milestones. After further discussions, in November 2013, NextGen provided an "Implementation Timeline" for the project of 6-10 months (which would have placed completion between May 2014 and September 2014), but again provided no completion dates for individual aspects of the EMR. Indeed, despite numerous requests, and countless meetings between the NextGen and District project teams, NextGen failed to deliver a complete project plan until January 2014. At that time, the proposed go-live date was October 4, 2014.

20.    Over the next several months, the District continued to insist on a project plan with defined milestones and completion dates. By this time, it was apparent that the EMR would not go live within the 6-10 month period originally promised, or by the October 4, 2014 date. In August 2014, the parties agreed on a new plan with a later go-live date of February 25, 2015. That date passed without a

fully functional EMR system.   Members of the District project team continued to work with NextGen into the spring of 2015 to test the functionality of the system and discuss its progress, but were never given an EMR that performed as required by the Contract.   Indeed, each of the features noted above were either completely absent from the system, or failed to work in the manner the Contract prescribed.   By this time, NextGen had missed its promised go-live date on at least 4 separate occasions.

21.   At this time, it was apparent to the District employees working on the project that NextGen's software platform was not what NextGen had represented it to be.   The platform could not be tailored to medical staff needs, did not include all of the templates indicated in NextGen's description of its product, and was not easily customizable as represented.   Similarly, the platform did not have a "robust and flexible" alert subsystem as represented, and did not allow the District to easily edit alerts and triggers.

22.   Despite these ongoing difficulties, the District performed its obligations under the contract, having transferred substantial funds to NextGen in payment of its periodic invoices.   After it became apparent that the EMR developed by NextGen did not, and likely never would, meet the baseline requirements in the Statement of Work, the District ceased further payment as permitted by the Contract.

23.   Section E-2 of the Contract provides that all work performed by NextGen will be "free from defects and conform to the requirements of this contract." Further, Section E-2 allows the Contracting Officer for the District to give written

notice of any defect or nonconformance within one year of acceptance of work, and requires that NextGen correct the defect at no cost to the District. In addition, Section G-5 of the Contract expressly authorizes the District to withhold payment for work not properly completed.

24.     Section 9 of Addendum 1 gives NextGen 30 days following a notice of default to cure. Consistent with these provisions, and due to the persistent problems with the EMR and NextGen's repeated failure to deliver a system that conformed to the Statement of Work, the Contracting officer authorized and directed counsel for the District to provide written notice to NextGen of the numerous defects and failures of the EMR. NextGen received this notice by letter dated May 14, 2015 from counsel, as the Contracting Officer's duly authorized representative.

25.     NextGen responded on June 1, 2015, denying that its work failed to conform to the Contract's requirements, or otherwise blaming its failure to deliver on others. NextGen did not commit to correct any of the defects identified by the District, and took no further action to improve the EMR system.

26.     After the 30-day cure period expired, the Contracting Officer determined that NextGen's response failed to establish that NextGen had performed the Contract and that it had failed to cure the defaults identified on May 14, 2015. Based on this determination, the Contracting Officer authorized and directed counsel for the District to give NextGen notice of termination of the Contract, which was doneby letter dated June 17, 2015. The termination letter cited NextGen's failure to correct the numerous defects set out in the Contracting Officer's May 14

correspondence, and demanded repayment of all amounts previously paid to NextGen by the District. The letter made an express finding that NextGen was in default, and advised NextGen of its right to appeal under the disputes clause of the Contract.

27.     Section H-10 of the Contract specifies the manner in which disputes relating to the Contract will be resolved. In particular, the Contract provides that the Contracting Officer will decide all such disputes, and that – absent an appeal within 90 days of such decision – the Contracting Officer's decision "shall be final and conclusive."

28.     To date, NextGen has failed to appeal this decision or otherwise respond. Thus, more than 90 days have passed since the Contracting Officer notified NextGen that it was in default, and no appeal has been made to the District. Accordingly, the finding of default has been conclusively decided against NextGen.

29.     All conditions precedent to filing suit have been satisfied by the District.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

30.     The District incorporates by reference the allegations contained in Paragraphs 1 through 29 as if fully set forth herein.

31.     On or about September 15, 2013, the District and NextGen entered into a Contract by which NextGen agreed to provide an electronic medical records system

that met the requirements set out in the Statement of Work incorporated into the Contract.

32.    The Contract is a valid and enforceable contract.  The Contract provides that failure to fulfill the obligations of the Contract is a default.  NextGen failed to fulfill the obligations of the Contract by failing to deliver a system that conformed to the Statement of Work.  NextGen was given notice of default and an opportunity to cure, but it did not, instead factually disputing that a default had occurred.

33.    The Contracting Officer made a finding of default, and NextGen failed to timely appeal consistent with the disputes provision of the Contract.  Accordingly, NextGen is conclusively deemed to have breached.

34.    As a direct and proximate result of NextGen's breach, the District has been damaged in an amount to be proven at trial, such damages to include the costs of cover.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, the District prays that the Court enter a judgment against Defendant granting the District the following relief:

a.    Judgment against NextGen that it has breached the Contract and awarding the District damages in an amount to be determined by the trier of fact, plus pre-and post-judgment interest, costs, expenses, and attorneys' fees, as allowed by law (including without limitation, Texas Civ. Prac. & Rem. Code § 38.001) and under equitable principles, for NextGen's breach of the Contract; and

b.    Such other and further relief as the Court deems just and appropriate.


Date:  March 8, 2016                    Respectfully submitted,

                                        */s/ Linda R. Stahl*
                                        E. Leon Carter
                                        Texas Bar No. 03914300
                                        *lcarter@carterscholer.com*
                                        Linda R. Stahl
                                        Texas Bar No. 00798525
                                        *lstahl@carterscholer.com*
                                        **CARTER SCHOLER ARNETT**
                                        **HAMADA & MOCKLER, PLLC**
                                        8150 N. Central Expressway
                                        Suite 500
                                        Dallas, Texas 75206
                                        T: 214.550.8188 | F: 214.550.8185

                                        **ATTORNEYS FOR PLAINTIFF**