UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DALLAS COUNTY HOSPITAL DISTRICT d/b/a PARKLAND HEALTH & HOSPITAL SYSTEM, | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-4063-B |
| | § | |
| NEXTGEN HEALTHCARE INFORMATION SYSTEMS, LLC, | § § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant NextGen Healthcare Information Systems, LLC's (NextGen) Motion to Dismiss Plaintiff Dallas County Hospital District's (Parkland) First Amended Complaint Pursuant to Rule 12(b)(1). Doc. 21. The parties argued their positions at a hearing on January 4, 2017. For the following reasons, the Court **DENIES** NextGen's Motion.

I.

BACKGROUND

This is a contract dispute. Parkland is a county hospital district and "political subdivision of the State of Texas." Doc. 1, Pl.'s Compl. ¶ 1. NextGen is a company that provides electronic medical record "software to hospitals and practitioners." Doc. 22, Def.'s Br. in Supp. of Mot. to Dismiss 2 [hereinafter Def.'s Br.]. On September 15, 2013, Parkland contracted with NextGen for a record management system. *Id.* The parties executed two documents that day: (1) the Contract for Services (the Contract); and (2) the Software License & Services Agreement Addendum #1 (the

Addendum). *Id.*; Doc. 25, Pl.'s Resp. App. 7, 58.

The Contract lays out performance standards and deadlines for NextGen. *See* Doc. 1, Pl.'s Compl. ¶¶ 8–17. The details of both those requirements and the parties' ensuing conflict are irrelevant here—suffice to say that Parkland thinks NextGen breached the Contract. *See* Doc. 1, Pl.'s Compl. ¶¶ 18–26. The Court's focus is whether Parkland complied with the Contract's procedural requirements when it conveyed that thought to NextGen.

Parkland claims its Chief Operating Officer, Ronald Laxton, determined that NextGen was in default under the Contract. Docs. 24, Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 10 [hereinafter Pl.'s Resp.]; 25, Pl.'s Resp. App., Ex. A, Decl. of Ronald Laxton. Then, Parkland continues, he instructed Parkland's counsel to give NextGen notice of default. Parkland's counsel sent a notice of default to NextGen on May 14, 2015. *Id.* The Notice Letter included eight pages of factual findings of default and informed NextGen that it had thirty days to cure. Doc. 25, Pl.'s Resp. App., Ex. B, Notice Letter. NextGen denied the allegations of default and—under the belief that the notice of default was not actually a notice of default because it did not issue directly from Laxton—took no further action. Docs. 22, Def.'s Br. 2–3; 24, Pl.'s Resp. ¶ 11.

After the Contract's 30-day cure period expired, Parkland says Laxton directed Parkland's counsel to issue a final decision that Parkland was terminating the Contract. Docs. 24, Pl.'s Resp. ¶ 12; 25, Pl.'s Resp. App., Ex. A, Decl. of Ronald Laxton, Ex. D, Termination Letter. The Termination Letter referenced the findings of fact included in the Notice Letter, noted that NextGen had failed to remedy them, demanded repayment of Parkland's previous payments to NextGen, concluded that NextGen was in default, and advised NextGen of its right to appeal within 90 days under the Contract's Disputes Clause. Docs. 24, Pl.'s Resp. ¶ 12; 25, Pl.'s Resp. App., Ex. D,

Termination Letter.

NextGen did not respond to the Termination Letter. Docs. 22, Def.'s Br. 2–3; 24, Pl.'s Resp. ¶¶ 13–14. So after the 90-day appeal window passed, Parkland brought suit to enforce its finding of breach. Doc. 24, Pl.'s Resp. ¶ 15. NextGen now moves to dismiss Parkland's claim under Rule 12(b)(1), alleging that the Court lacks subject matter jurisdiction because Parkland failed to exhaust its own administrative dispute resolution process before bringing suit.

## II.

## LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction.'" *MacKenzie v. Castro*, No. 3:15-cv-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (quoting *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute. Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge that jurisdiction. *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (internal citations omitted).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie*, 2016 WL 3906084, at *2. A facial challenge occurs "when a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "'is on the party asserting jurisdiction.'" *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). So Parkland must prove jurisdiction exists. Yet that is no high bar: "'[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.'" *Santerre v. AGIP Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999)

(quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997)).

For a facial challenge, courts consider just "the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). And if they sufficiently allege a claim for recovery, then the complaint stands and the court must entertain the suit. *Id.*

But this is a factual challenge. Plaintiffs enjoy no presumption towards truthfulness here. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). Instead, they must "prove subject matter jurisdiction by a preponderance of the evidence." *MacKenzie*, 2016 WL 3906084, at *2 (citing *Paterson*, 644 F.2d at 523). To that end, each party may submit affidavits, testimony, and other evidentiary materials in support of their positions. *Paterson*, 644 F.3d at 523.

This is unlike a motion to dismiss under Rule 12(b)(6). *See Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, at *10 (S.D. Tex. Oct. 22, 2008) (citing *Garcia*, 104 F.3d at 1261) (explaining that courts "may consider matters outside the pleadings" in the context of Rule 12(b)(1) "without converting the motion to dismiss to one for summary judgment"). On that basis, courts are given wide discretion "to resolve disputed jurisdictional facts." *Id.* So in resolving a factual challenge, the court, "which does not address the merits of the suit, has significant authority to 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Ellis v. Educ. Comm'n for Foreign Med. Graduates*, No. A. H-14-2126, 2015 WL 3866728, at *2 (S.D. Tex. June 23, 2015) (quoting *id.*).

## III.

## ANALYSIS

To start—and to give some backdrop to the tangle of statutes, regulations, and arguments

that follow—the Court recognizes that the "doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *McKart v. United States*, 395 U.S. 185, 193 (1969). It "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* (internal quotations and citations omitted). Usually, this comes about when someone suing an agency jumps the gun on bringing suit. But the doctrine flows both ways—agencies must exhaust their own administrative remedies before seeking judicial relief. *See Martinez v. United States*, 728 F.2d 694, 698 (5th Cir. 1984).

NextGen's Motion rests on that premise—it argues that the Court lacks subject matter jurisdiction because Parkland failed to follow its own administrative procedures. Accordingly, the parties centered all of their initial briefing on that point, presupposing that no exhaustion equaled no jurisdiction. Yet that oversimplifies the issue because the exhaustion can be either statutory or jurisprudential. *See Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810 (5th Cir. 2016). Statutory exhaustion requirements set forth in statutes or regulations are jurisdictional prerequisites; if a party does not exhaust its administrative remedies, then courts lack subject matter jurisdiction. *Id.*; *see also Taylor v. U.S. Treas. Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (explaining that statutory exhaustion requirements are "tantamount to a legislative investiture of exclusive original jurisdiction in the agency").

But "'in the absence of a statutory requirement of exhaustion of administrative remedies, the jurisprudential doctrine of exhaustion controls.' That doctrine 'is not jurisdictional in nature,'" and to treat it as such is error. *Williams*, 826 F.3d at 810 (quoting *Taylor*, 127 F.3d at 475). With that in mind, the Court ordered the parties to submit additional briefing on the nature of the exhaustion requirement at issue here. *See* Doc. 28, Order for Suppl. Br.

- 5 -

A.     *Which Process Must Be Exhausted and From Where Does it Flow?*

1.     Parkland's own procedures create a statutory exhaustion requirement

Both parties agree that there is a statutory exhaustion requirement at play here that implicates the Court's subject matter jurisdiction. After reviewing the parties' briefing and considering their oral arguments, the Court concurs. *See* Docs. 29, Pl.'s Suppl. Br. 2, 4–7; 31, Def.'s Suppl. Br. 2–6.

Parkland is an agency of the state and derives its authority from both the Texas Local Government and Health and Safety Codes. The Public Property Finance Act grants governmental agencies acting through their governing bodies the ability to contract for certain purchases. Tex. Loc. Gov't Code §§ 271.001 *et seq.* Parkland is a governmental agency and its Board of Managers is a governing body. *See id.* §§ 271.003(3)–(5). And Section 271.005 grants the Board authority to enter into contracts like the one at issue here. *Id.* § 271.005.

The Health and Safety Code grants the Board general powers to control and manage Parkland. *See* Tex. Health & Safety Code § 281.047. The Dallas County Commissioners Court has authority to develop specific policies and procedures for making such purchases—but they can delegate that power to the Board. *Id.* § 281.049. And that's what happened here.

The Commissioners Court established purchasing policies, then delegated the enforcement and administration of those policies to the Board. Dallas Cty. Code § 78-31(a). The Board then set out those procedures in the Dallas County Hospital District Purchasing Practices and Procedures Manual (the Manual). Dallas Cty. Hosp. Dist. Purchasing Prac. & Proc. Manual, *available at* http://www.parklandhospital.com/Uploads/Public/Documents/PDFs/Purchasing-Practices-and-Procedures-Manual.pdf [hereinafter Manual] Thus, the Manual is a regulatory scheme promulgated

- 6 -

under powers granted by the Texas state legislature, and its exhaustion requirements are therefore statutory. *See Martin K. Eby Const., Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467–68 (explaining that a governmental agency's dispute-resolution procedures found only in its own procurement regulations and agreement with contractors may constitute a statutory administrative exhaustion requirement).

> 2.     The Contract provides the procedures to be followed

As noted above, both sides agree up to this point—and so does the Court. They disagree, however, on which of Parkland's procedures apply. Parkland argues that the procedures set forth in the Contract's Disputes Clause control. *See* Doc. 29, Pl.'s Suppl. Br. 3, 7–10. NextGen, on the other hand, claims that the Manual's procedures govern. *See* Doc. 31, Def.'s Suppl. Br. 6–11.

The Manual applies to "every expenditure of [Parkland's] funds." Manual § 1-106(1)–(2); Doc. 22, Def.'s Br. 7. It is over 200 pages long and has a litany of provisions. *See generally* Manual. Two are relevant here. The first is Section 10-400 – Contract Disputes Procedures. Manual § 10-401–404. It "contains the procedures for resolving contract disputes pursuant to the Disputes Clause required by the [Manual] to be included in [Parkland's] contracts." *Id.* § 10-401. That includes the Contract with NextGen. Doc. 22, Def.'s Br. 7. The Manual provides that:

> (1) When a controversy cannot be resolved by mutual agreement, the Contracting Officer shall, after written request by the contractor for a final decision, promptly issue a written decision. Before issuing a final decision, the Contracting Officer shall:
>         (a) review the facts pertinent to the controversy; and
>         (b) secure any necessary assistance from legal, fiscal, and other advisors.
> (2) The Contracting Officer immediately shall furnish a copy of the decision to the contractor . . . and include in the decision:
>         (a) a description of the facts giving rise to the controversy;
>         (b) a reference to pertinent contract provisions;
>         (c) a state of the factual areas of agreement or disagreement;
>         (d) a statement of the Contracting Officer's decision, with supporting

rationale; and

(e) a paragraph substantially as follow:

> "This is the final decision of the Contracting Officer. This decision may be appealed to the Board of Managers of the District. If you decide to make such an appeal, you must mail or otherwise furnish a written notice of appeal to the Board on or before the 90th day from the date you receive this decision. A copy of the notice of appeal shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, reference the decision from which the appeal is being taken, and identify the contract involved.

Manual § 10-403. The second is the disputes clause that is set out in Chapter Six of the Manual. It is also the Contract's Disputes Clause, and reads in pertinent part:

> Except as otherwise provided in this contract, any dispute concerning a question of fact or law arising under or related to this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to [NextGen]. The decision of the Contracting Officer shall be final and conclusive unless, on or before the 90th day from the date of receipt of such copy, [NextGen] mails or otherwise furnishes a written appeal addressed to [Parkland].

Doc. 23, Def.'s App. 6–7, Contract § H-10. A cursory comparison of the two provisions sheds light on the parties' positions: Parkland's actions here look to comply with the Disputes Clause but the Manual is a closer call. The Court looks to the whole of the Contract to determine which applies. *Klein v. Fed. Ins. Co.*, —F. Supp. 3d—, 2016 WL 7106307, at *6 (N.D. Tex. 2016).

Contracting Officer is a defined term in the Contract. Originally, it meant "the person executing this contract of behalf of [Parkland] or such person's duly appointed successor" and included "the authorized representative of the Contracting Officer acting within the limits of such representative's authority." Doc. 23, Def.'s App. 5, Contract § A-1(c).

But the parties later executed two Schedules amending the Contract. *See id.* at 8–10, Contract Schedules A-1 & A-2. Schedule A-1 redefined Contracting Officer to mean only

Parkland's "Chief Executive Officer, Chief Financial Officer, or Chief Operating Officer." *Id.* at 9, Contract Schedule A-1 ¶ 12. Schedule A-2 established the primacy of documents for interpretation—any inconsistency would "be resolved by giving precedence to the following order: (a) the Addendum; (b) the Schedules; and (c) the Contract." *Id.* at 10, Contract Schedule A-2. So the Addendum controls. And it contains the following provision:

> Other than those provisions of the [Manual] specifically referenced in the [Contract], the terms and conditions of the [Manual] shall not be applicable to [NextGen].

*Id.* at 11, Addendum ¶ C.3. Accordingly, Parkland claims, the Contract's Dispute Clause alone provides the dispute resolution procedures that Parkland had to follow before bringing suit because the Disputes Clause does not reference the Manual. *See* Doc. 29, Pl.'s Suppl. Br. 3, 7–10. NextGen asserts a number of positions in response to argue that the combined impact of the above provisions allow the Manual's dispute resolution procedures to supplement the Disputes Clause. *See* Doc. 31, Def.'s Suppl. Br. 6–11. None are persuasive.

Section 271.154 of the Texas Local Government Code provides that administrative remedies applicable to a local government entity's particular purchase are established by the parties' affirmative incorporation of those terms into their contract. But here, the Dallas County Code expressly provides that Parkland's CEO or COO can create exceptions to the Manual's procedures if—as happened here—those exceptions are filed with Parkland's Board of Managers. *See* Dallas Cty. Code § 78-31(c); Doc. 30, Pl.'s App. Supp. Suppl. Br., Ex. A, Decl. of James Floyd. The Manual itself echoes that position:

> The Chief Executive Officer may approve deviations from this Manual with respect to an individual procurement; provided, however, that any such deviation (together with a description of the circumstances and the justification therefore) shall be reported to the Board at its next meeting in a written report of the Chief Executive

Officer.

Manual § 2-301. Read together, then, § 271.154 of the Texas Local Government Code, together with § 78-31(c) of the Dallas County Code and § 2-301 of the Manual, allow Parkland's Board of Managers to deviate from the Manual's procedures on a contract-by-contract basis if the deviation is reported to the Board at its next meeting in a written report from Parkland's CEO. Put another way, Parkland's Board of Managers dictates the dispute resolution procedure for every contract that Parkland enters into—and while the Manual provides the default process, the parties are free to amend that process by the terms of their agreement provided they gain Board approval. The Court is not charting new territory with this line of reasoning—indeed, another court in this District has found as much and was affirmed by the Fifth Circuit. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Trans.*, No. 3:03-cv-0110-G, 2003 WL 21529043, at *3 (N.D. Tex. July 3, 2003), *aff'd* 369 F.3d 464 (5th Cir. 2004).

In that case, a contractor entered into a contract with Dallas Area Rapid Transit. *Id.* at *1. DART, like Parkland, had a procurement manual. *Id.* at *2. And like Parkland's, it contained both a section on dispute procedures and a template disputes clause to be included in DART's contracts. The language in both manuals is substantially the same, as is the disputes clause. The contract in that case, however, specified that the contractor had to exhaust its administrative remedies under *either* the manual *or* the disputes clause. *Id.* at *3. It did neither, and the court found:

> As previously noted, the Texas Transportation Code empowers the DART board of directors to promulgate rules regarding the resolution of contract disputes. The contract between Eby and DART specified that Eby must first submit its dispute to a Contracting Officer. Because Eby has not exhausted its requisite administrative remedies *prescribed by the contract*, it is not entitled to judicial review.

*Id.* (emphasis added). Simply put, the contract's terms controlled and, because they were

- 10 -

promulgated by the board, were jurisdictional—just like in this case. And while the contract in *Eby* allowed for the parties to appeal through either the contract's dispute clause or the manual's section on dispute procedures, the Contract here does not. The Contract's Addendum is clear that the Manual applies only when expressly referred to. The Disputes Clause does not mention it. So the Disputes Clause alone sets forth the procedures that the parties must exhaust before filing suit.

3.   Conclusion

In sum, a confluence of the Texas Government, Local Government, and Health & Safety Codes, along with the Dallas County Code and Parkland's procurement Manual, creates a statutory administrative exhaustion requirement that must be satisfied for the Court to have subject matter jurisdiction. Generally, Parkland's Manual sets out the applicable procedures. Here, however, Parkland's Board, using authority delegated to it by the Dallas County Commissioners Court, approved the Contract's deviation from those default procedures. And the Contract makes plain that in this situation, the Disputes Clause's procedures—not the Manual's—control.

As a result, Parkland must have followed the Disputes Clause's procedures before it filed suit. The fate of NextGen's motion therefore turns on whether it did.

B.   *What Steps Must Parkland Take Under the Contract's Disputes Clause?*

The Contract's Disputes Clause states, in pertinent part:

> Except as otherwise provided in this contract, any dispute concerning a question of fact or law arising under or related to this contract which is not disposed of by an agreement *shall be decided by the Contracting Officer, who shall reduce his decision to writing* and mail or otherwise furnish a copy thereof to the Contractor.

Doc. 25, Pl.'s Resp. App. 15–16 (emphasis added).

NextGen argues that Parkland failed to follow the Disputes Clause. Doc. 22, Def.'s Br. 4–6.

- 11 -

In particular, NextGen claims that, when read in conjunction with Schedule A-1's amended definition of Contracting Officer, the Disputes Clause requires a C-suite executive to both make a decision on default and breach *and* reduce his own decision to writing. In other words, the amended definition prevents a Contracting Officer from delegating any authority under the Disputes Clause—he must make the decision and then either author or sign the notices sent to NextGen. *Id.*

Nextgen asserts that Parkland's COO Laxton did not do both steps. Laxton may have made the decision, NextGen concedes, but he delegated his duty to reduce that decision to writing. *Id.* In so doing, NextGen continues, Parkland violated the Disputes Clause and robbed NextGen of notice that it had reached a final decision on default. *Id.* at 5–6. In short, Parkland did not exhaust its own administrative process. *Id.* Therefore, NextGen concludes, the Court lacks subject matter jurisdiction. *Id.*

Parkland presents an antipodal interpretation in response: The Disputes Clause, when read together with Contracting Officer's amended definition, just prevents the Contracting Officer from delegating his decision-making authority. Doc. 24, Pl's Resp. 5–6. That his decision be reduced to writing is integral; who reduces it, however, is irrelevant. *Id.* Laxton made the decision that NextGen was in default and breach, and then had Parkland's legal department reduce his decision to writing and mail it to NextGen. *See* Doc. 25, Pl.'s Resp. App., Ex. A, Decl. of Ronald Laxton. For that reason, Parkland concludes, it complied with the Disputes Clause. *Id.*

The Court sides with Parkland and finds NextGen's argument wanting on two levels. For starters, NextGen's entire theory is that it lacked notice of default because Ronald Laxton did not personally author or sign the letters it received. That position is questionable given that the letters were titled "Notice of Default" and "Termination for Default." Doc. 25, Pl.'s Resp. App., Ex. B,

Notice Letter; Ex. D, Termination Letter. Those look clear enough.

As to the larger issue of interpreting what "who shall reduce to writing" means, it strains credulity to believe that NextGen, in negotiating the terms of the Contract, thought it necessary that the Contracting Officer must him or herself type out the contents of his or her decision.

> Under Texas law, the court's primary concern when interpreting a contract is to ascertain the parties intentions as expressed objectively in the contract. In doing so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all contractual provisions, so that none will be rendered meaningless. *Language should be given its plain and grammatical meaning unless it definitely appears that the parties intentions would thereby be defeated.* Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of law.

*Klein*, 2016 WL 7106307, at *6 (emphasis added) (internal citations omitted).

At bottom, then, this whole fight hinges on what "reduce" means. Merriam-Webster provides 12 definitions; two apply here: (1) "to bring to a specified state or condition"; and (2) "to put down in written or printed form." *Reduce*, Merriam-Webster (Dec. 14, 2016), https://www.merriam-webster.com/dictionary/reduce. Neither would appear to require that Laxton personally wrote the letters to NextGen.

To be sure, NextGen may have intended that the Contract require a Contracting Officer to personally write out his or her decision. But if a contract "is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and the court must construe the policy as a matter of law and enforce it as written." *Tetra Tech. Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 746–47 (5th Cir. 2016). In other words, a contract is not ambiguous unless it is "susceptible to two or more *reasonable* interpretations." *Tesoro Ref. & Mktg. Co. v. Nat'l Union Fire Ins. Co. of Pitt.*, 833 F.3d 470, 474 (5th Cir. 2016) (internal quotations and citations omitted). Neither the bare presence of conflicting

contract interpretations nor mere "disagreement about the meaning of" terms is enough. *Id.*

And here, it just is not reasonable to conclude that "reduce to writing" means write; if it did, then the contract would have said "write" instead. Laxton made his decision and then made sure that it was written down (ie. "reduced to writing") and sent to NextGen. That suffices. Parkland has proven by a preponderance of the evidence that it complied with the Disputes Clause and, in so doing, exhausted its own administrative process. On that basis, the Court has subject matter jurisdiction over this case.

## IV.

## CONCLUSION

For the above reasons, the Court **DENIES** NextGen's Motion to Dismiss Parkland's First Amended Complaint Pursuant to Rule 12(b)(1).

SO ORDERED.

SIGNED: January 6, 2017.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE